UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RONALD A. FAVIER,

     Plaintiff,

 vs.

MAYNARD COUNTRY CLUB,

     Defendant.

Docket No. 04-12540MLW

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

The defendant Maynard Country Club (the "Club"), submits this Memorandum of Law in Support of its Motion to Dismiss and for Summary Judgment dismissing Ronald A. Favier's (the "Plaintiff" or " Mr. Favier") Complaint in its entirety. Each of the Complaint's five claims should be dismissed because they either fail to state a claim upon which relief may be granted or because, based upon the record evidence, there are no material disputed facts and on the undisputed facts, the Club is entitled to judgment as a matter of law.

In support of this Motion, the Club relies on the discovery conducted by both parties at the Massachusetts Commission Against Discrimination's Attorney Assisted Unit in the underlying MCAD matter, including the undisputed facts admitted by Mr. Favier at his deposition; the deposition testimony of Michael J. Kaminski, Jane Ford, and Patricia Triska; and the clear and unambiguous terms of the employment-at-will contract dated January 1, 2001 (the "Agreement"). The Club also relies on various business records of the Club, and on the Affidavit of Michael Kaminski. This evidence directly and conclusively contradicts many of the allegations in Mr. Favier's Complaint and disposes of all of the claims asserted by him.

## I.    **INTRODUCTION**

Mr. Favier alleges that his employment as General Manager of the Club was terminated on account of his age in violation of G.L. c. 151B.[1] Yet his own deposition testimony, taken during MCAD discovery, demonstrates that Mr. Favier supports his allegations of age discrimination solely with baseless, unsupported ***assumptions***, and that he has ***no evidence*** whatsoever to prove that age played any role in the Club's decision to terminate his employment. For example, Mr. Favier testified to the following:

Q.    So, because you were never given a reason [for your termination], you ***assumed*** it was because of your age, is that correct?
A.    That's what I believe, yes.

Q.    Other than that ***assumption***, is there any other bases for which you believe that you were terminated because of your age?
A.    You mean like a statement from somebody or -- I'm not sure I understand the question.

Q.    Do you have any ***facts*** to support your belief that you were terminated because of your age?
A.    ***No***, just the fact that I was terminated.

Q.    Do you have any ***evidence*** that might support your belief that you were terminated because of your age?
A.    ***Again, no.***[2]

His "assumptions" and "beliefs" are not sufficient to defeat a motion for summary judgment.[3]

*Medina –Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

Mr. Favier's other claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), as they fail to state a claim upon which relief may be granted *as a matter of law.*

---

[1]    He was hired in January 2000 when he was 52 years of age, and was terminated less than three years later, when he was 55.

[2]    *See* Plaintiff's deposition transcript at page 98 (hereinafter referred to as "Pl. Dep.") which is attached to Affidavit of Carrie J. Campion ("Campion Aff.") as Exhibit 1 (*emphasis added*).

[3]    The Massachusetts Commission Against Discrimination considered and rejected Mr. Favier's claims, issuing a lack of probable cause finding after considering the briefs, affidavits, and documentary evidence, following discovery conducted through the MCAD Attorney Assisted Unit procedures, submitted by Mr. Favier's and the Maynard Country Club's attorneys. 804 CMR 1.15(7)(a) requires that a probable cause finding be issued if there are disputes involving genuine issues of material fact, so that the resolution of those issues may be reserved for determination at a public hearing. The MCAD found no such disputed facts.

- 3 -

## II.    SUMMARY OF THE CLUB'S POSITION

Each of the five counts in the Complaint must be dismissed: (1) the G.L. c. 151B (age

discrimination) count must be dismissed because Mr. Favier cannot establish a *prima facie* case

of age discrimination, and the Club had a legitimate non-discriminatory reason for terminating

Mr. Favier for which he cannot demonstrate pretext; (2) the breach of contract count should be

dismissed because the alleged employment agreement is merely an at-will contract with a thirty

day termination clause, with which the Club complied; (3) the intentional and negligent infliction

of emotional distress claims must be dismissed because they are barred by the exclusivity

provision of Workers' Compensation Act, G.L. c. 152 §24; (4) the claim under the ADEA, 29

U.S.C. §621 *et. seq.*, must be dismissed because the Club is not an "employer" subject to the

statute because it did not employ the requisite number of employees during Mr. Favier's tenure.

## III.    RELEVANT PROCEDURAL HISTORY

Mr. Favier filed an MCAD Charge of Discrimination on March 5, 2003, alleging that the

Club terminated his employment as the General Manager because of his age in violation of the

Age Discrimination in Employment Act (29 U.S.C. §621 *et. seq.*) and G.L. c. 151B. After both

sides conducted substantial discovery[4] and submitted extensive proposed findings of fact and

law, the MCAD issued a lack of probable cause finding on September 20, 2004. Mr. Favier later

removed the case to Superior Court. The Club timely removed this matter to the United States

District Court because Favier's federal age discrimination claim raises a federal question.

In lieu of answering the Complaint, the Club has filed a Motion to Dismiss and for Summary

Judgment, with supporting affidavits and this Memorandum of Law, based on the discovery

---

[4]    At the MCAD level, Mr. Favier deposed the Board President, Mr. Kaminski, and his former
supervisor, Jane Ford.  Mr. Favier also propounded interrogatories and served a request for
production of documents.  The Club answered the interrogatories and produced almost three
hundred documents.  The Club deposed Mr. Favier and his witness, Patricia Triska. The Club
also propounded interrogatories and requests for production. In response, Mr. Favier answered
the interrogatories and produced almost eight hundred documents.

- 4 -

conducted at the MCAD.  As a result of this discovery, this case is ripe for dismissal.  There is no need to expend judicial resources or to incur further litigation costs on these meritless claims. Indeed, one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986).

## IV.    UNDISPUTED MATERIAL FACTS AND FACTUAL BACKGROUND

For a more thorough discussion of the relevant, undisputed, material facts, please see the Defendant's Statement of Undisputed Material Facts. These facts will not be repeated here in full, except as required to support the legal arguments made by the Club.

### A.  The Maynard Country Club

Maynard Country Club is a semi-private, 9 hole golf course golf club located in Maynard, Massachusetts that is overseen and managed by a volunteer Board of Governors (the "Board"). (Deposition of Michael Kaminski  ("Kam. Dep") at 187)[5]

Mr. Favier was hired as the Club's General Manager in January 2000. The Club and Mr. Favier entered into a five year employment agreement with a 30 day termination clause.  (Kam. Aff. Ex. 1 )  The agreement  was specific that it could be terminated by either party at any time for any reason as long as the terminating party provided thirty (30) days notice.

The Board is elected by the Club's membership.  In April 2002, the Club held elections for new Board members.  The election resulted in an overwhelming change to the Board membership, including a new President (Michael Kaminski) and new Treasurer (Joan Apkin). (Kam Dep. at 11)  The new Board members were committed to operating the Club in a more business-like manner, including with a renewed dedication to running a cost efficient business with particular attention to lowering the existing debt and implementing new procedures and policies to attain those goals.  (Kam. Dep. at 149; Campion Aff. Ex. 8)

---

[5]     Mr. Kaminski's deposition transcript is attached to the Campion Affidavit as Exhibit 3.

As part of this initiative, the President of the Club appointed a House Committee Chairperson (Jane Ford), who was tasked to serve as Mr. Favier's immediate supervisor. (Kam. Dep. at 32, 33)  In addition to her supervisory role over Mr. Favier, the House Committee Chairperson was responsible for working cooperatively with the new Treasurer, Joan Apkin, to identify ways that the Club could run more cost effectively and efficiently. (Kam. Aff. ¶ 7)  As a result of this new organization, both the Treasurer and the House Committee Chairperson were required to work closely with, and to scrutinize, Mr. Favier's job performance to achieve these business goals. *Id.*

### B. **Mr. Favier Failed To Meet The New Board's Expectations**

Prior to the 2002 election of new Board members, the Board gave Mr. Favier great leeway and freedom in managing the day-to-day operations and finances of the Club.  When the new Board was elected in 2002, that changed "dramatically". (Pl. Dep. at 40)  The Board determined that the Club's finances were weak, the accounting practices were not uniform, and management policies were not consistently enforced. (Kam. Dep. at 96, 97)  In order to obtain an accurate reading of the Club's financial strengths and weaknesses, as well as improve the Club's overall professionalism and business-like performance, the House Committee Chairperson and the Treasurer assumed certain responsibilities previously left to the General Manager. (Kam. Aff. ¶ 11)  They requested that the General Manager provide them with reports and data to assist in identifying areas for improvement.

The result of this increased scrutiny was the Board's ultimate determination that Mr. Favier lacked the skill set or was unwilling to execute his management responsibilities in the manner they required. (Kam. Dep. at 55, 127)  Importantly, Mr. Favier did not disagree with the conclusion that he was not a good manager.  In a letter to his assistant manager, Mr. Favier wrote that she probably "knew more about managing then I do" [sic] and, that " I may not be a good

manager." (Campion Aff. at Ex. 6)  It is very common that new management finds fault with the existing procedures and employees, and determines that the existing employees are not a good fit with the new regime's way of doing things.  That is precisely what occurred here.  Below are just a few examples of Mr. Favier's failure to meet the new Board's expectations:[6]

### 1.    Mr. Favier Failed To Prepare Accurate And Timely Reports

The House Committee Chairperson directed Mr. Favier to prepare financial reports based on the financial results of Club functions, such as a tournament, so that the Board could assess the financial health of the Club and make educated business decisions regarding whether or not the event was profitable or how to handle a similar event in the future.  (Kam. Dep. at 67)  Mr. Favier not only failed to produce timely and accurate reports as instructed, he even failed to understand the importance of the reports.  (Kam. Dep. at 67-68)  He complained about preparing the reports, stating, "Why do you need it," "Never had to do it before," and "Why now?"  *Id.* Not only did Mr. Favier complain about being asked to prepare the reports, but when Ms. Ford directed Mr. Favier to provide her with them, "If I [Mr. Favier] thought it was wrong, what she requested, I stated that I didn't think it was right." (Pl. Dep. at 40)  Mr. Favier acknowledged that this practice "didn't add to the pleasantries of the situation." (Pl. Dep. at 40)

Mr. Favier admitted in his deposition testimony that Ms. Ford demanded "a lot" of reports from him and that he "couldn't deliver them as quickly as she wanted them."  When asked why Ms. Ford wanted the reports, Mr. Favier testified that he "couldn't go inside her head" and that he "really [didn't] know." (Pl. Dep. at 68)

---

[6]    The Court is referred to paragraphs 21-41 of the Defendant's Statement of Undisputed Facts for a more fulsome description of the instances in which Mr. Favier failed to live up to the Board's expectations.

### 2. __Mr. Favier Failed To Safeguard The Club's Assets__

Mr. Favier was charged with the responsibility of safeguarding the Club's assets, including the Club's bank deposits. The Club had two safes in which it kept deposits, one opened by a key and one opened by a numeric combination. Mr. Favier testified in his deposition that the safes held cash and membership dues, ranging from over nine thousand dollars to just under five hundred dollars, depending on the season and recent Club events. (Pl. Dep. at 17, 102) Despite the large amount of cash in the safe, and his duty to keep the Club's money safe, incredibly, Mr. Favier kept the key to one safe on a hook and the combination for the other pinned to a bulletin board in the same room as the safes, both clearly visible and accessible to anyone. (Kam. Dep. at 67, 78)

### 3. __Mr. Favier Failed To Manage Employees Effectively__

Mr. Favier was responsible for managing the Club's few employees. Managing employees included scheduling, resolving conflicts and providing direction to the employees so that the Club ran smoothly. In the golf season of 2002, the House Committee Chairperson met with Club employees to discuss their concerns about the Club's management. During that meeting, several employees expressed concerns that Mr. Favier did not provide them with promised hours, that they received little support from him, and that he treated them in an inconsistent manner. (Kam. Dep. at 85-86, 95-96) Employees made complaints to Mr. Kaminski regarding Mr. Favier's management of the Club. Specifically, the Club's cook complained about Mr. Favier's lack of direction, and a pro-shop employee complained that Mr. Favier constantly changed her hours and reprimanded her while allowing others to get away with the same conduct. (Kam. Dep. at 95-96) Additionally, Ms. Ford was concerned with allegations that Mr. Favier was having an affair with one of his subordinates, which she

- 8 -

considered unprofessional behavior. (Ford Dep. at 34)[7] Further, Mr. Kaminski was concerned that Mr. Favier, an unmarried man, did not handle difficult or confrontational situations with employees and members, that he had a difficult time when asking members to follow the rules, and that he was not respected by the Club's employees. (Kam. Dep. at 85-86)

Mr. Kaminski observed that, Mr. Favier lacked the tact and professional demeanor the Board demanded of the General Manager. For example, he spread a rumor that the Board Treasurer had misappropriated funds, (Kam. Dep. at 104), and that Mr. Kaminski inappropriately removed documents from the Club and misappropriated money earmarked for a Club Christmas party. (Kam. Dep. at 105) Overall, Mr. Favier failed to demonstrate the ability to handle management issues on his own or accept ownership for problems within the Club. (Kam. Dep. at 100-101, 103, 113)

In response to Mr. Favier's performance deficiencies, Board members discussed their concerns with him on numerous occasions. Mr. Kaminski discussed his performance concerns with Mr. Favier formally on one occasion and informally on numerous occasions. (Kam. Dep. at 183-184) Following his performance discussions with Board members (including Mr. Kaminski), Mr. Favier's ability to work with members of the Board rapidly deteriorated. (Kam. Dep. at 112) Mr. Favier consistently refused to cooperate if a Board member asked him to perform an assigned job duty, such as completing a report or making a repair to the Club House. (Kam. Dep. at 76-77) Not only did he refuse to cooperate with Board members, but he complained often to Mr. Kaminski that they were unreasonable, did not respect the hours he worked, interfered with his running the Club, and requested information from him that he was incapable of providing. (Kam. Dep. at 63)

---

[7]    The transcript of the deposition of Joan Ford ("Ford Dep.") is Exhibit 2 to the Campion Affidavit.

Mr. Favier contended at the MCAD that he was never criticized, and that the Board did not tell him that they were dissatisfied with his performance. But his own deposition establishes that he was "criticized all the time" and that "there was just a feeling that I couldn't do anything right there, you know." (Pl. Dep. at 42)

Not only did the Board express to Mr. Favier that they were not satisfied with his performance, but throughout Mr. Favier's tenure he frequently expressed dissatisfaction with the demands of the position and threatened to quit his job on at least five occasions. (Kam. Dep. at 56-57, 194; Ford Dep. at 18) Mr. Favier even offered his resignation on the first day of his first golf season with the Club. "I offered my resignation...right when I started". (Pl. Dep. at 131) In April 2002, even before the new Board took office, Mr. Favier offered his resignation to his supervisor, the House Committee Chairperson. (Pl. Dep. at 142) In fact, Mr. Favier offered his resignation when working under each of his House Committee Chairpersons. (Pl. Dep. at 131, 132, 142)

Moreover, in the Summer of 2002, while the Board was attempting to improve Mr. Favier's job performance, he offered his resignation because he was working too many hours, and was asked to "do all these reports". Further, he stated that "if things keep up, you know, I can't work under these conditions." (Pl. Dep. at 132) Clearly, the record evidence establishes a long history of the Board's dissatisfaction with Mr. Favier's performance, and his own unhappiness with the demands and scrutiny of the Board to whom he reported.

As a result of the Board's frustration with Mr. Favier's performance, and his continual threats to quit in the face of greater job expectations, the Board voted to terminate his employment. (Ford Dep. at 10; Kam. Dep. at 16) Of the nine voting members on the Board, eight attended the executive session (ages 39 to 80) and voted by secret ballot. (Kam. Aff. ¶ 13) The tally was seven votes in favor of terminating Mr. Favier's employment contract with only

one vote in favor of retaining him. *Id.* Mr. Kaminski informed Mr. Favier on December 16, 2002 that the Board had voted to exercise the Agreement's 30 day termination clause, and paid him thirty (30) days' notice pay. [8]  (Kam. Aff. at 13, Exs. 3,4)

### C. The Board Did Not Terminate Mr. Favier Because Of His Age.

Despite Mr. Favier's litigation contention that he was terminated due to his age, he admitted at his deposition that he understood and believed that the Board "didn't want [him] as a GM" because "they had other ideas for the club."  That is, the Board was going to take the Club "in a new direction" and "I apparently wasn't part of the new direction" (Pl. Dep. at 43-44) Plaintiff, however, has "no certain knowledge" of why the change occurred. (Pl. Dep. at 44) Moreover, as noted above, he acknowledged at his deposition that he had a contentious day to day working relationship with the Board, which he has never claimed was related to his age.

### D. The General Manager Position was Eliminated.

After terminating Mr. Favier's employment, the Board eliminated the position of General Manager and created the new position of "Business Manager". (Kam. Dep. at 44)  The job responsibilities of the General Manager were absorbed into this more expansive position.  The Business Manager position is a higher paid position, with the added responsibility of golf course maintenance. (Kam. Dep. at 44-45, 50-51 )

The Club's Business Manager is an individual with over eighteen (18) years of experience in golf course maintenance and golf club management. (Kam. Aff. ¶ 19, Ex. 5)  By contrast, Mr. Favier had no prior experience in golf course management prior to his tenure with the Club.  He had worked in an auto body supply company for at least sixteen years immediately prior to becoming the Club's General Manager. (Pl. Dep. at 127)

---

[8] It should be noted that Mr. Favier has never alleged that the criticism of his work by the Board stemmed, to any extent, from age discrimination.  His only claim for age discrimination in the Complaint and his Charge of Discrimination at the MCAD, was that his employment was terminated on account of his age. (Pl. Dep. at 98; Compl. ¶¶ 6, 13, 15; Compl. Ex. 1, ¶¶ 13, 14)

## V.    ARGUMENT

### A.  The Intentional And Negligent Infliction Of Emotional Distress Claims Must Be Dismissed.

Under well established law, the emotional distress claims are barred by the exclusivity provision of the Massachusetts Workers' Compensation Act. G.L. c.152 §24. *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 664, (1996) (Employee's common law claims for intentional and negligent infliction of emotional distress arising out of sexual harassment in workplace were barred by exclusivity provision of Workers' Compensation Act); *Grosick v. Smith & Wesson*, 1989 U.S. Dist. LEXIS 12458, 4-5 (D.Mass. 1989). These claims must be dismissed.

### B.  The Breach Of Contract Claim Must Be Dismissed Because Mr. Favier Had An Employment Agreement Terminable At Will On Thirty Days' Notice And The Club Complied With It.

Mr. Favier's breach of contract claim is frivolous. His Employment Agreement governed the terms of his employment, and it expressly provided that he could be terminated at any time for any reason upon thirty (30) days notice. Employment Agreement at ¶ 6. (Kam. Aff. Ex. 3) The Club followed that provision to a tee.

The Club exercised its undisputed contractual right to terminate Mr. Favier's contract when, on December 16, 2002, the Board voted to terminate the agreement pursuant to Paragraph 6 of the Employment Agreement. It is undisputed that the Board paid him for the thirty (30) day notice period, thus fully discharging its contractual duty to Mr. Favier. The breach of contract claims must be dismissed.

### C.  The Age Discrimination Claims Must Be Dismissed Because, On The Undisputed Facts, There Is No Basis For The Claims.

#### 1.    The Summary Judgment Standard

Summary judgment shall be granted when there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Thus, summary judgment is

proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In weighing the merits of a motion for summary judgment, the court must address two questions: (1) whether the factual disputes are genuine, and (2) whether a fact genuinely in dispute is material. *Anderson v.* Liberty, 477 U.S. 242, 247-48 (1986). Only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment. *Id.* at 248. "Even in cases where elusive concepts such as motive and intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Runyon v. Mass. Inst. of Tech.*, 871 F. Supp. 1502, 1506 (D. Mass. 1994) (quoting *Medina –Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Thus, summary judgment can be, and often is, appropriate in employment discrimination cases. *Byrd v. Ronayne*, 61 F.3d 1026, 1030 (1st Cir. 1995) (quoting *Medina* at 8).

## 2.    The ADEA Claim Must Be Dismissed Because The Club Does Not Have 20 Employees.

Mr. Favier's ADEA claims (29 U.S.C. §621 *et. seq.*) must be dismissed because the Club is not an "employer" as defined in the Act. The ADEA defines "employers" as an entity or person employing twenty or more employees for at least twenty weeks. 29 U.S.C. § 630 (b). The Club has never employed twenty employees for at least twenty weeks. (Kam. Aff. ¶ 15) Even Mr. Favier's MCAD Charge of Discrimination Cover Sheet which is attached to the Complaint as Exhibit 1 states that the Club employees only eight (8) full time employees.

## 3.    The Undisputed Facts Establish That the Chapter 151B Claim Must Be Dismissed.

In evaluating age discrimination claims under Chapter 151B, Massachusetts' courts use the same three-stage analysis originally devised by the United States Supreme Court to address

BOS1440670.3

Title VII discrimination claims. *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 127 (1997); *Blare v. Husky Injection Molding Systems Boston, Inc.*, 419 Mass. 437, 440, (1995). In the first stage, Mr. Favier has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. *Blare* at 441. Once the *prima facie* case is established, a presumption of discrimination is created. *Id.* The burden then shifts to the defendant to rebut the presumption "by articulating a legitimate, non-discriminatory reason for its . . . decision." *Id.* Once the defendant satisfies its burden of production, the presumption vanishes, and Mr. Favier bears the burden of persuasion at the crucial third stage to establish either that the employer's articulated reason was a pretext or that the actual reason for the termination was discrimination. *Id.* at 444; *Matthews*, 426 Mass. at 128.

Upon examination of Mr. Favier's own testimony regarding the circumstances surrounding his termination, it is clear that: 1) Mr. Favier cannot establish a *prima facie* case of age discrimination; 2) the Club had a legitimate business reason for his termination; and 3) Mr. Favier cannot establish that the Club's articulated reason for termination was pretext.

### a.  **Mr. Favier Cannot Establish A *Prima Facie* Case Of Age Discrimination.**

To make out a *prima facie* case of age discrimination, a plaintiff is required to demonstrate that: (i) he was over the age of 40; (ii) his work was sufficient to meet his employer's legitimate expectations; (iii) his employer took adverse action against him; and (iv) the employer sought a replacement with roughly equivalent qualifications, thus revealing a continued need for the same services and skills. *Galdauckas v. Interstate Hotels Corp. et. al.*, 901 F. Supp. 454, 461 (D. Mass. 1995); *Blare*, 419 Mass. at 441.

Here, Mr. Favier cannot establish the second and fourth prongs of a *prima facie* case of age discrimination. First, as to the second prong, the record evidence before this Court establishes that Mr. Favier was not performing his job to the satisfaction of the Board. By his own admission, he was "criticized all the time" by the Board to whom he reported, who,

BOS1440670.3

according to Mr. Favier, did not think he could "do anything right". (Pl. Def. at 42)  As explained above and in Defendants' Statement of Undisputed Material Facts, Mr. Favier was either unable or unwilling to do what the Board demanded of him.  Instead of doing what was asked, he questioned and second-guessed their instructions which, as he put it, "didn't add to the pleasantness of the situation". (Pl. Dep. at 40)  Unless he retracts or contradicts his deposition testimony,[9] he cannot genuinely argue to this Court that he was performing his job to the reasonable satisfaction of his employer.

As to the fourth prong of the *prima facie* case, the Club did not replace Mr. Favier with someone of roughly equivalent qualifications.  Rather, the Club eliminated the General Manager position, created an expanded Business Manager position, and filled it with an individual that had far greater credentials and experience than Mr. Favier:  eighteen (18) years of experience managing golf clubs, including the maintenance of the golf course itself, an essential component of the new Business Manager's responsibilities.  Mr. Favier's credentials pale by comparison. (Kam. Aff. ¶ 19, Ex. 5)  Because Mr. Favier cannot make out a *prima facie* case of age discrimination under Chapter 151B, this claim, too, must be dismissed.

### b.  The Club Demonstrated A Legitimate Non-Discriminatory Reason For Mr. Favier's Termination.

Even if this Court determines that Mr. Favier has made out a *prima facie* case of age discrimination under Chapter 151B, the claim is still subject to dismissal.  The Board's decision to terminate Mr. Favier's employment was based on its legitimate business need for a manager who had the skills, and demonstrated a willingness, to work with the new Board on its initiative to run the Club in a more professional and business-like manner.  With the new Board came new and higher expectations for the General Manager.  From April 2002 until his termination,

---

[9]  A nonmoving party cannot defeat a motion for summary judgment with an affidavit that contradicts his deposition testimony.  *Colantuoni v. Alfred Calcagnis*, 44 F.3d 1, 5 (1st Cir. 1994).

Mr. Favier demonstrated that he did not have the financial and management skills necessary to perform this position at the level required by the new Board, or the willingness to work with the Board. Instead, he resisted the new direction of the Board, openly complaining about Board members and their expectations for his performance. Instead of embracing their goals, he threatened to quit on several occasions. The Board, therefore, needed someone with whom they could work more effectively to run the Club in a more professional and businesslike manner. Since Mr. Favier demonstrated that he could not meet the legitimate expectations of the Board, they voted 7-1 to terminate his employment.

### c. Mr. Favier Cannot Establish That The Club's Articulated Reason For Termination Is Pretextual.

When a plaintiff lacks direct evidence of age discrimination, courts will consider indirect evidence which may be relevant to Mr. Favier's showing of pretext. *Lewis v. Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 767, 493 N.E.2d 867 (1986); *Blare v. Husky Injection Molding Sys. Boston*, 419 Mass. 437 at 447. "A plaintiff must offer some minimally sufficient evidence, direct or indirect, both of pretext and of the employer's discriminatory animus to prevail in the face of a properly drawn Rule 56 motion." *Mesnick v. General Elec. Com.* 950 F.2d 824, 825 (1st Cir. 1991).

Even if Mr. Favier could establish a *prima facie* case of age discrimination (which he cannot), summary judgment should still be granted because he cannot demonstrate that the Club's reasons for terminating his employment were untrue or that the Club acted for discriminatory reasons. Mr. Favier, who at no time during his employment complained of any discrimination or unfair treatment based on his age, simply cannot present any evidence that the Club's stated reasons for its actions are pretextual. Indeed, as argued above, his own testimony regarding the Board's criticism of him "all the time" and his admitted failure to do what the

Board asked of him, establish that the Board had more than ample reason to terminate his employment.[10]

In fact, Mr. Favier admits in his deposition testimony that he has no reason to believe that age was a motivating factor in the Board's alleged treatment of him, but "assumed it was [his] age, for lack of another reason". (Pl. Dep. at 97)

Q.    "So, you believe -- do you believe that the Board made its decision [to terminate your employment] based on your age?

A.    I can't---I don't know what they believed. I don't know. I mean, I have to ask them. I hope I get the chance to. You know, nobody on the Board told me I did bad. So, I don't know what they believed. I don't know what they were told."

Q.    Is there any member of the Board in particular that you believe would have based his or [her] decision on your age?

A.    I can't testify to that. I don't know.

Q.    So, you're not sure whether any of the Board members used age in their decision?

A.    No, I'm not. I mean, I'll ***speculate*** all day long, you know, young ones wanted somebody younger. Old ones thought I was fine. I would like the numbers to speak for me and the satisfaction level of the membership to speak for me.

Q.    ***So, other than that, just <u>general</u> <u>speculation</u>, do you have any other facts that would support any belief that the Board made its decision based on age?***

A.    ***<u>I have</u> <u>no</u> <u>other facts</u>, <u>no</u>.***

(Pl. Dep. at 110-111)

By Mr. Favier's own words, his only "proof" that he was terminated because of his age is "lack of another reason". Age discrimination cases are not determined by the process of elimination. Rather, Mr. Favier must have some evidence establishing pretext. Mr. Favier may not rely upon his unsubstantiated belief that he was the victim of discrimination. *Runyon* at 1506.

Nor may he may establish discriminatory animus by relying solely on the Club's hiring of an employee who, although younger, was nevertheless a member of the protected class. *Weihaupt v. American Medical Assn.*, 874 F.2d 419, 430 (7th Cir. 1989). Because younger people often replace older people in their jobs for legitimate reasons, Mr. Favier must show more

---

[10]    Mr. Favier testified that he was not the only employee of the Board who was subject to criticism by the Board. The increased scrutiny applied to other employees as well (including younger
*(Footnote continued on next page)*

than the age of the replacement to prove that age discrimination was a factor in his termination. *Id.*; *Jaquith v. May Dep't Stores Co.,* 1993 Mass. Super. LEXIS 35, 7 (1993). He has no such evidence.

The Club had the right to exercise its business judgment in determining what direction was best for the Club. It also had the right to determine which of two candidates for a job was better qualified. It is not a court's role to second guess the business decisions of an employer. *LeBlanc v. Great Amer. Ins. Co.,* 6 F.3d 836, 846 (1st Cir. 1993). The Club eliminated the position of General Manager and created the new position of Business Manager. The duties of the Business Manager were similar to the former duties of the General Manager with the expectation that the Business Manager would operate at a high level of professional and business standards. Additionally, as the position has evolved, the Business Manager is also responsible for the maintenance of the golf course. The new person in the position, Nathaniel Binns, had eighteen (18) years of experience in running golf courses, including golf course maintenance. Mr. Favier's experience cannot compare to that of Mr. Binns. (Kam. Aff. ¶ 19, Ex. 5)

In his Complaint (¶ 14), Mr. Favier quotes Joan Apkin, the Treasurer of the Club, as referring to Mr. Favier "as that old bastard...." The source of the quote is apparently Patricia A. Triska, a Club employee, who apparently heard the remark. Ms. Triska also quotes Jane Ford as commenting on Mr. Favier's age. But these stray remarks, put in their actual and proper context, are not evidence of discriminatory animus. Rather, according to Ms. Triska's deposition testimony, these comments were made in the context of gossiping about Mr. Favier's notorious (among the membership) affair with one of his younger subordinates, Sherri Hoffman. (Triska Deposition at page 35, 40, 43-44, attached to the Campion Aff. as Exhibit 4) According to Ms.

---

*(Footnote continued from previous page)*
employees not within the protected class). (Def. Stat. of Undisputed Facts ¶¶ 47, 55) This fact belies any contention that Mr. Favier was singled out for harsh treatment because of his age.

- 18 -

Triska, both Ms. Apkin and Ms. Ford disapproved of the affair. Thus, their comments were not evidence of age animus, but of disapproval of Mr. Favier's affair with a younger subordinate.

In any event, even assuming Ms. Ford and Ms. Apkin did make the comments alleged, such comments constitute nothing more than "stray remarks," made remotely in time (at least six months prior) to Mr. Favier's termination and in a context unrelated to his termination. (Triska Dep. at 40) Such stray remarks are not probative of pretext absent some discernible evidentiary basis for assessing their temporal and contextual relevance. *Straughn v. Delta Airlines Inc.*, 250 F.3d 23 at 36 (1st Cir. 2001); *see Mesnick v. General Electric Company*, 950 F.2d 816 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992) (holding that "two isolated tidbits" or "fragments" purporting to indicate defendant's discriminatory motives are not probative of whether defendant had a discriminatory agenda).

Here, the context of the remarks was Mr. Favier's alleged affair with a younger subordinate. The remarks were made at least six months prior to Mr. Favier's termination, and spoken by, at most, only two of the eight voting Board members. Therefore, the remarks are not probative evidence of age discrimination. *McMillan v. Mass. Soc. for Prevention of Cruelty To Animals*, 140 F.3d 288, 301 (1st Cir. 1998), cert. denied, 525 U.S. 1104, 142 L. Ed. 2d 772, 119 S. Ct. 870 (1999) (Probativeness of remarks for pretext inquiry is "circumscribed if they were made in a situation temporally remote from the date of the employment decision, or if they were not related to the employment decision in question. ")

Further, it is illogical that a member of the protected age class would discriminate against another member of the age class on the basis of age. Seven out of the eight Board members employees who voted on whether to terminate Mr. Favier's employment contract were over the age of 40 (at the time of the vote), and most of them were very close in age to or older than Mr. Favier (50, 54, 58, 65 and 80).

Moreover, the new Board tried to work with Mr. Favier during the entire 2002 golf season. They made clear to him that they expected a higher level of professionalism, and that they wanted their Club to be run more professionally. They counseled him repeatedly about his failure to meet their expectations, and yet he repeatedly failed to perform up to the new Board's expectations. If age had been the reason for the Board's decision to remove him from the job, that decision would have come much earlier, or the Board would have simply accepted one of Mr. Favier's several threats to resign.

Thus, Mr. Favier's age discrimination claim under Chapter 151B comes down to a couple of stray remarks, made in the context of disapproving gossip about his affair with a younger subordinate, and the fact that he was replaced by a slightly younger (mid-40's) candidate with vastly superior credentials. Based on established law, this is not a sufficient basis on which to defeat a motion for summary judgment. Rather, given his own testimony under oath, Mr. Favier cannot credibly contend that the Board was satisfied with his performance, and that the Board did not have ample reason to terminate his employment. He cannot show pretext, and he has no evidence of discriminatory animus. The Chapter 151B claim must, therefore, be dismissed.

## CONCLUSION

Based on the record evidence before the Court, and the cited authorities, it is respectfully submitted that the Complaint must be dismissed in its entirety.

Respectfully submitted,

MAYNARD COUNTRY CLUB

By its attorneys,

David S. Rosenthal (BBO No. 429260)
Carrie J. Campion (BBO No. 656451)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-2131
(617) 345-1000

Dated:  December 6, 2004

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand on 12/6/04

BOS1440670.3