UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RONALD A. FAVIER, )
)
Plaintiff, )
)
vs. ) Docket No. 04-12540-MLW
)
MAYNARD COUNTRY CLUB, )
)
Defendant. )

## MEMORANDUM OF LAW OF THE PLAINTIFF, RONALD A. FAVIER, IN SUPPORT OF HIS OBJECTION AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

The plaintiff Ronald A. Favier ("Mr. Favier"), submits this Objection and Opposition to the defendant's Motion to Dismiss and for Summary Judgment. Briefly, there are material disputed facts, which prevent the entry of judgment in favor of the defendant Maynard Country Club, Inc. as a matter of law, per Fed. R. Civ. Pro. 56.

This evidence directly raises a *prima facie* case and contradicts many of the allegations raised by the defendant Country Club in its Motion. Therefore, the Country Club's Motion should be denied.

In support of his Opposition, Ronald Favier relies on the discovery conducted by both parties at the Massachusetts Commission Against Discrimination, the deposition testimony of Ronald A. Favier, Michael J. Kaminski, Jane Ford, Patricial Triska; and his Motion to Strike Portions of the Affidavit of Michael Kaminiski, upon which the defendant's Motion is based. Ronald Favier also relies on various records of the defendant Country Club, the Affidavit of Attorney Hurley, and on his own Affidavit.

This evidence directly and conclusively demonstrates that there are material facts in dispute.

Specifically, Ronald Favier's former assistant, Ms. Patricia Triska testified that the defendant's then Treasurer, Joan Apkin, "several times" referred to Ronald Favier as an, "F'ing old bastard." See page 41, lines 18 to 24 of Ms. Triska's deposition testimony, attached as Exhibit 4 to Attorney Campion's Affidavit. In addition, Ms. Triska testified that Treasurer Joan Apkin stated that she believed that Ronald Favier should retire. See page 59, lines 2 to 5 of Ms. Triska's deposition.

## I. INTRODUCTION

Ronald Favier has appropriately alleged that his employment as the General Manager of the defendant Country Club was terminated on account of his age in violation of M.G.L. c. 151B. He was 55 years old when he was terminated. Mr. Favier's deposition testimony was taken on October 29, 2003, well before Ms. Patricia Triska's deposition of February 17, 2004. Ms. Triska's testimony is not based on mere "assumptions" or "beliefs" but her hearing two important agents of the defendant Country Club make inappropriate references to Mr. Ronald Favier's age.

Under the circumstances, the Defendant's reliance on Fed. R. Civ. P. 12(b)(6) is inappropriate, as the plaintiff has alleged sufficient facts to set forth causes of action under both the state and federal age discrimination statutes.

## II. SUMMARY OF RONALD FAVIER'S POSITION

Ronald Favier has appropriately alleged and set forth all elements required to state a *prima facie* case of age discrimination under M.G.L. c. 151B. The defendant Country

2

Club has not provided a legitimate non-discriminatory reason for terminating Mr. Favier; he can demonstrate pretext for the stated reasons.

Mr. Favier was employed as the General Manager of the defendant Maynard Country Club at the time of his discharge. Mr. Favier's value as an employee is evidenced by the fact that his one year employment contract was extended to a five year contract with the defendant. Highlights of his tenure with the defendant include, but are not limited to: dramatic membership approval, merit salary increases, Christmas bonuses, and increased green revenues. The defendant, via its agents Jane Ford and Joan Apkin made improper explicit references to Mr. Favier's age, evidencing their bias and that of the defendant. Both Ms. Ford and Ms. Apkin were in supervisory positions to Mr. Favier. Under the relevant statutes and appropriate case law, the defendant Country Club cannot sustain its burden of showing that the reasons provided for Mr. Favier's termination are other than pre-textual. A "... plaintiff should not be required to produce 'smoking-gun' evidence before prevailing in a discrimination suit." Mesnick v. General Electric Co., 950 F.2d 816, 823 (1st Cir. 1991).

## III. RELEVANT PROCEDURAL HISTORY

Ronald Favier, like the defendant, was limited to six hours of deposition time at the discovery phase of the Massachusetts Commission Against Discrimination Case. He was able to depose only the President of the Country Club and one voting member of the Country Club's Board of Governors, Ms. Jane Ford. The depositions of both Ronald Favier and Patricia Triska were called by the defendant Country Club. Documentation cannot substitute for live testimony. President Kaminski's inexplicable memory failure revealed in his deposition demonstrates the need for complete discovery in this case. See

pages 40-43, Exhibit 3 of Attorney Campion's Affidavit, for specific evidence of Mr. Kaminski's memory failure, including the following exchange at page 43, lines 3 to 6:

> Q. "At this meeting at the conference room at the Spectra Corporation, do you recall any discussion about Ronald Favier's age?
>
> A. I don't recall."

## IV. DISPUTED MATERIAL FACTS AND FACTUAL BACKGROUND

For a more thorough discussion of the relevant, disputed material facts, please see the Plaintiff's Response to the Defendant's Statement of Undisputed Material Facts.

Mr. Favier, born March 11, 1947, was hired as the defendant country club's General Manager on January 21, 2000. The defendant country club is a private golf course located at 50 Brown Street, Maynard, Massachusetts. As General Manager, Mr. Favier had general day-to-day control over the defendant country club's operations. Mr. Favier's tenure saw increases in overall Club revenue, including green fees and golf cart rental fees. He was rewarded with pay increases, Christmas bonuses, and constant praise. Please see Exhibit 1 to Attorney Edmund Hurley's Affidavit, a collection of notes and letters of praise from the defendant's members for Mr. Favier, which are put in chronological order. Mr. Favier's accomplishments as General Manager of the defendant from early 2000 to late 2002 include the following:

1. Increased membership, increased revenue, an increased waiting list for potential members;

2. Friday night prime rib dinners, with consequent increased revenue;

3. Increased food and beverage selections, increasing member satisfaction;

4. Increased cleanliness for both safety and comfort of the membership;

5. Increased on-course refreshments and secured "Special Event" liquor licenses to increase sales and profits;

6. Being on or under budget each year;

7. Enjoying a reduction in defendant's overall debt; and

8. Charity fund-raisers, as for the American Red Cross, and condolences to family members of recently deceased members.

Unbeknownst to Mr. Favier at the time, the defendant's Treasurer Joan Apkin, in or about March of 2002, stated that she and her friends believed that Mr. Favier should resign as the General Manager of the defendant. In addition, she repeatedly referred to Mr. Favier as, "that old bastard." Please see Exhibit 2 of Attorney Hurley's Affidavit, Ms. Patricia Triska's affidavit; see also her deposition testimony, Exhibit 4 of Attorney Campion's Affidavit. Please note particularly paragraph four (4) of Ms. Triska's affidavit. In addition, please note page 41, lines 18 to 21 and page 60, lines 1 to 7 of Ms. Triska's deposition testimony.

In or about April of 2002, House Committee Chair, Jane Ford, discussed an unfounded rumor that Mr. Favier was having an affair with the Country Club's bookkeeper, who was in her 30's. As Ms. Triska verifies: "Ms. Ford stated in substance, words to the effect that, at his (Ron's age), he could barely do his own job, never mind carry on with a younger woman." Please see paragraph five (5) of the affidavit of Ms. Triska, attached as Exhibit 2 to Attorney Hurley's affidavit.

On December 16, 2002, President Kaminski informed Mr. Favier that he had been terminated by a vote of the Board of Directors. He told Mr. Favier that it was, "time for a change." He further stated that Mr. Favier's personal integrity was not in question. The defendant replaced Mr. Favier with a 42 year old man, who has experience in golf course

maintenance, but much less experience in golf course management, according to his resume, a copy of which is attached to Ronald Favier's Affidavit as Exhibit 5.

A. <u>**Ronald A. Favier's Work Performance was More than Adequate**</u>

Ronald Favier and the defendant Country Club entered into a one year employment agreement, which was extended to five years in January of 2001. President Michael Kaminski implicitly praised Ronald Favier on July 1, 2002: "In my three months as president, I have received very little complaints or issues from the members . . . they seem to be pleased with the way the club is operating. To me, this is the bottom line . . . membership satifaction. [sic]." See the sixth paragraph of Exhibit 1 to Ronald Favier's Affidavit.

The defendant Country Club is correct that certain of its employees had complaints. However, said complaints were with the defendant's own Board of Governors -- not with Ronald Favier! "On the other hand, I have received a tremendous amount of complaints from employees and members as to the conduct of the BOG [Board of Governors] as a whole. We are viewed as a group that can't get along and are constantly harassing the employees of the club. This is disgraceful and we all must take ownership of this problem." See the seventh paragraph of Exhibit 1 to Ronald Favier's Affidavit. Unfortunately, the members of the defendant's Board of Governors appear unwilling or unable to "take ownership" of their problems. Please note that as the defendant's General Manager, Ronald Favier was not a member of the Board of Governors.

1.  **<u>Ronald Favier Prepared Accurate Financial Reports; Safeguarded the Club's Assets; and Managed Employees Effectively</u>**

First, it must be noted that the defendant country club did not contemporaneously criticize Ronald Favier's employment performance in the areas cited by the Defendant. On June 24, 2002, less than six months before his termination, House Committee Chair Jane Ford wrote in part as follows: "Ron [Favier] presented to me a **great** report about the successful men's member guest. **<u>The report detailed and offered actual expenses and profits</u>**." (Emphasis added). See Exhibit 3 of Ronald Favier's Affidavit, numbered paragraph four (4). It defies credibility to suggest that somehow Mr. Favier lost his ability and "skill set" to write "great" reports between the summer and fall of 2002. In addition, House Chair Ford suggests that Ronald Favier was a team player: "I will be speaking with Ron [Favier] as needed and play [sic] on this being a team effort between Ron and I and I know he agrees." See Exhibit 3 of Mr. Favier's Affidavit, at the sentence under numbered paragraph eight.

Mr. Favier used the defendant country club's safes as his predecessor had. President Kaminski did not ask him to place the safes' combinations or keys anyplace different, which logically he would have had that been his real concern. Nothing was taken from either safe under Mr. Favier's tenure. Had President Kaminski truly been concerned, he would have simply asked that Mr. Favier put the safe keys and combinations elsewhere.

Although Ronald Favier is able to produce documentation praising his performance, the defendant country club appears unable to produce contemporaneous documentation seriously criticizing Ronald Favier's performance.

**B.    The Defendant's Treasurer and House Committee Chair Were Motivated by Improper Age Bias and Animus**

As the assistant to General Manager Ronald A. Favier, Ms. Patricia Triska had a unique and comprehensive opportunity to view the Country Club's on-going and insidious age related comments, as stated by Treasurer Joan Apkin and House Committee Chair Jane Ford. Inasmuch as both Ms. Apkin and Ms. Ford had supervisory status over Mr. Favier, their improper age discrimination is properly imputed to the defendant as a whole.

Ms. Triska performed residential house cleaning services for Treasurer Apkin, and had the opportunity to observe her at her home, a more relaxed atmosphere than the Country Club's environs. Although they did not impact his work performance or duties, Ms. Apkin and Ms. Ford took a substantial, prurient, and improper interest in Mr. Favier's age and personal life. Ms. Triska credibly and authoritatively quotes both Ms. Apkin and Ford as referring to Mr. Favier's (allegedly advanced) age.

It is no accident that the persons who improperly made references to Mr. Favier's age were in key supervisory positions. As stated by President Kaminski in his November 6, 2003 deposition testimony, (See Exhibit 3 of Attorney Campion's Affidavit at pages 33-34, lines 24 to 3):

Q.   "Well, as house chairperson, wouldn't she [Jane Ford] be the person who had the most contact with Ronald Favier on the Board of Governors?"

A.   "Yes, she would."

Please see the November 21, 2003 affidavit of Patricia Triska, attached as Exhibit 2 to Attorney Hurley's Affidavit. The comments by the defendant's supervisory agents are consistent with Mr. Favier's allegations of age bias. The defendant notes that many

8

on the "firing" Board of Governors were over 40 years of age. However, the Country Club fails to note that the average age of the Board which hired Mr. Favier was older than that of the "firing" Board. In any event, "older" persons can commit illegal age discrimination as well as younger persons. See, e.g., Messnick v. General Electric Co., 950 F.2d 816, 826, footnote 8 (1991): "[E]mployer remarked that 'it's time we older guys turned over the daily reins to some other group'". (Citation omitted). Both Ms. Ford and Ms. Apkin are younger than Mr. Favier, who looks older than his 57 years. Clearly, Mr. Favier's age should not have been relevant.

Unfortunately, Ms. Ford and Ms. Apkin appeared to be successful in their efforts to turn others against the previously praised and honored Mr. Favier. Perhaps the best example of the insidious influence is seen by President Kaminski's 180 degree turn, from a supporter of Mr. Favier, to a detractor, despite the consistency and high quality of Mr. Favier's work performance. Ms. Triska's confirmation of the improper age bias of Treasurer Apkin and House Committee Chair Ford explains fully the wrongful termination of Mr. Favier. In contrast, none of the defendant's proffered reasons withstand scrutiny.

Jane Ford, the House Committee Chair and Joan Apkin, the Treasurer, were both voting members of the Defendant Country Club's Board of Governors. According to the deposition testimony of Patricia Triska, former assistant manager of the Defendant Country Club, both Ms. Ford and Ms. Apkin said things such as, "'Maybe his is not working because he is too old to do the job,' or things like that." See page 38, lines 1 to 3 of Ms. Triska's deposition, attached as an Exhibit to Attorney Campion's Affidavit as Exhibit 4. Ms. Triska was able to narrow the time that the statements were made to

9

between November of 2001 and May of 2002. Please see page 39, lines 11 to 15 of Ms. Triska's deposition.

In addition, Ms. Triska recalls House Committee Chair Jane Ford stated in May or June of 2002: "At his [Mr. Favier's] age, he, how can he be with her when he can't even do his job." The gossip about Mr. Favier, a single man, allegedly having an affair with a younger single woman is secondary to the direct reference by a supervisor to Mr. Favier's employment. See page 40 of Ms. Triska's deposition, lines 5 to 20. See also page 41, lines 1-7 of said deposition.

Ms. Triska further recalls that the Defendant's then Treasurer, Joan Apkins "several times" referred to Ronald Favier as an, "F'ing old bastard." See page 41, lines 18 to 24 of Ms. Triska's deposition testimony. Finally, Ms. Triska testified that Treasurer Joan Apkin stated that she believe that Ronald Favier should retire. See page 59, lines 2 to 5 of Ms. Triska's deposition.

### C.    The Defendant's Alleged Reasons for Termination were False and Pretextual

The Defendant's agents have denied their concern with Mr. Favier's age, and falsely accused Mr. Favier of not performing his job duties properly despite the fact that he had continued to perform at the same high quality as he always had. Defendant's pretextual "reasons" for terminating Mr. Favier are all demonstrably false, as explained herein.

On July 1, 2002, President Kaminski had major concerns -- not about Mr. Favier's performance -- but about the Board of Governors of the defendant. According to President Kaminski, the Board is "woefully inept in running it's [sic] own business, never mind the business of the Maynard Country Club." Please see Exhibit 1 of Ronald

Favier's Affidavit. President Kaminski goes on to explain that there were few complaints about the running of the Country Club, which fell under the jurisdiction of Mr. Favier, but there were many complaints about the Board of Governors.

Each of the Country Club's pre-textual reasons is demonstrably false:

1. Alleged lack of financial, computer, and bookkeeping skills;
2. Alleged lack of interpersonal skills and alleged lack of cooperation; and
3. Alleged lack of urgency in completing tasks.

First, Mr. Kaminski and others voted to increase Mr. Favier's pay in early 2002, (See, Exhibit 3 of Attorney Campion's Affidavit, Mr. Kaminski's deposition at page 147, lines 1-7). Had Mr. Favier's "skill set" been deficient, this would have been apparent long before December of 2002. He started as General Manger in early 2000. Secondly, Mr. Favier's alleged lack of skills was not brought to his attention, at least as to financial reports, to the knowledge of Mr. Kaminski. Third, the letters of recommendation and praise speak for themselves. Please see Exhibit 1 to Attorney Hurley's Affidavit. Fourth, President Kaminski implicitly praised in writing Ronald Favier's club management in his July 1, 2002 E-mail. Attached as Exhibit 1 to Ronald Favier's Affidavit. Fifth, on June 11, 2002, President Kaminski requested in writing that Mr. Favier tell Ms. Apkin a falsehood as to his possession of club documents, suggesting a lack of a firm fidelity to integrity: " . . . even if you find the tax returns [requested by Treasurer Apkin] you didn't, if you know what I mean . . . " See Exhibit 4 of Mr. Favier's Affidavit. Please note that Mr. Favier's integrity has not been questioned by President Kaminski. (See page 150 of Mr. Kaminski's deposition, Exhibit 3 of Attorney Campion's Affidavit).

In addition, the Affidavits of Peter Boeing, Ronald Favier, and Robert Nowd refute each of the defendant's pre-textual reasons. Please see exhibits 3, 4, and 5 to Attorney Hurley's Affidavit.

According to his resume, the primary "new" qualification Mr. Binns brought to the defendant, other than his relative youth, was his prior maintenance of golf course greens. However, the defendant has not alleged that course maintenance was a factor in its termination of Mr. Favier. The reasons provided are pre-textual. President Kaminski was specifically asked how Mr. Favier's replacement's duties differed from those of Mr. Favier (at page 47, lines 1-5) of his November 6, 2003 deposition, Exhibit 3 of Attorney Campion's Affidavit:

> Q. "Other than golf course maintenance, can you describe for me Nathaniel Binns' duties as business manger of the Maynard Country Club?
>
> A. "Well, he has the same responsibilities basically as the previous general manager [Mr. Favier] had."

In a revealing admission, President Kaminski stated of Nathaniel Binns as follows: "Well, when that was first brought on, we were not sure of his [Mr. Binns'] background in course management." (Page 50, lines 17-18, of President Kaminski's deposition). Had the Country Club been concerned with issues other than Mr. Favier's age, it would have been sure of Mr. Favier's replacement's "background in [golf] course management." Even President Kaminski's public letter of introduction of Mr. Favier's replacement incorrectly stated Mr. Binn's last place of employment.

Based on a negative backlash from its members, somebody on the defendant's Board of Governors prepared an unsigned memorandum to "explain" its wrongful termination of Mr. Favier. Handwritten in the document is the following phrase: "Not a

financial Q." See Exhibit 7 of Attorney Hurley's Affidavit. This indicates a lack of credibility with the defendant's proffered reasons. Importantly, neither President Kaminski nor Jane Ford could identify the author of said document.

It is not surprising that the defendant does not want this Court to see its own report to the Massachusetts Department of Employment and Training. Please see Exhibit 6 attached to Attorney Hurley's affidavit. President Kaminski certifies under the "penalties of perjury," that Mr. Favier was terminated due to "Lack of Work." This statement is clearly false.

### D.  The Defendant Cannot Sustain its Burden to Demonstrate that it would have Terminated Ronald Favier but for his Age

The defendant lacks credible evidence to rebut Mr. Favier's evidence of improper age discrimination. In fact, Michael Kaminski, the defendant's President since the Spring of 2002, who is a trained accountant, "with a Bachelor of Science in Accounting from Northeastern University" (and former President and part owner of a company, according to his deposition at p. 10, line 4, Exhibit 3 of Attorney Campion's Affidavit), cannot recall the substance of the meeting whereat defendant's Board of Director's decided to discharge Mr. Favier.

President Kaminski's failure to remember the substance of the Fall 2002 meeting at which Mr. Favier's termination was decided, is nothing short of disingenuous. See pages 40-43, for specific evidence of Mr. Kaminski's memory failure, including the following exchange at page 43, lines 3 to 6:

> Q.  "At this meeting at the conference room at the Spectra Corporation, do you recall any discussion about Ronald Favier's age?
>
> A.  I don't recall."

However, Ms. Patricia Triska does recall the age related comments from both Joan Akin and Jane Ford. Please see Ms. Triska's Affidavit, Exhibit 2 of Attorney Hurley's Affidavit, along with the statement from Treasurer Apkin that Mr. Favier was an "f-ing old bastard." Page 41, line 21 of Ms. Triska's deposition testimony, Exhibit 4 of Attorney Campion's Affidavit.

Mr. Kaminski's memory as to Mr. Favier is often poor. For example, please see page 27, lines 3-7 of his deposition transcript, Exhibit 3 of Attorney Campion's Affidavit, and page 29, lines 15-18, and page 30, lines 15-17. When Mr. Kaminski's memory does not fail him, he sometimes makes demonstrably false statements. For example, Mr. Favier's younger replacement, Mr. Nathaniel Binns, does not have, "...18 plus years in a management position with golf courses," as alleged at page 52, lines 5-6 of Mr. Kaminski's deposition. According to Mr. Binn's resume, attached to Ronald Favier's Affidavit as Exhibit 5, he had fewer than <u>three</u> years as a General Manager at a golf club.

The person with the "cooperation" problem was Treasurer Joan Apkin, not Mr. Favier. In his May 6, 2002 memorandum, President Kaminski reminded Treasurer Apkin that, "the Club Manager [Ronald Favier] reports directly to the House Chairperson [Jane Ford] only, who reports directly to me." Please see President Kaminski's May 6, 2002 E-Mail to Treasurer Joan Apkin. The statements and actions of all involved indicate the age bias and discrimination against Mr. Favier.

Summary judgment was properly denied because genuine issues of material fact existed regarding whether the nondiscriminatory reasons stated for the plaintiff's termination were merely pretextual. <u>Draper v. Centennial Healthcare Corporation, et al.</u> (Lawyers Weekly No. 12-254-01(Brassard, J.)(Middlesex Superior Court Docket

14

Number 2000-02180) 2001; cited in the August 13, 2001 <u>Massachusetts Lawyers Weekly</u>. In <u>City of Salem v. Massachusetts Commission Against Discrimination</u>, 44 Mass. App. Ct. 627 (1998), the Court held that "an employer's use of uncontrolled subjectivity could be included as evidence which is or may be relevant to a plaintiff's showing of pretext." The Court held that the jury may consider "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." Id.

## V. ARGUMENT

### A. The Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56(f) this Court may properly refuse defendant's Motion to Dismiss and for Summary Judgment. The defendant seeks to acquire summary judgment in this matter by alleging an absence of evidence to support the plaintiff's case. Defendant alleges that the plaintiff has no reasonable expectation of proving essential elements of the case despite the fact that said information is within the possession, custody, or control of the defendant and its agents. Summary judgment should not be granted unless "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether these criteria have been satisfied, the court, "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inference in that party's favor." <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990).

The burden is on the moving party to establish that there are no genuine issues of material fact in dispute that it is entitled to judgment as a matter of law. Fed. R. Civ. P.

15

56(c); See also <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). All doubt as to the existence of a genuine material fact must be resolved against the party moving for Summary Judgment. See <u>Noble v. The Goodyear Tire and Rubber Co., Inc.</u>, 34 Mass. App. Courts 397, 612 N.E.2nd 250 (1993). A court will not grant summary judgment unless a review of the record "show[s] that there is no genuine issue as to any material fact.'" <u>Miner v. City of Glen Falls</u>, 999 F.2d 655, 661 (2d Cir. 1993)(citation omitted). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir. 1992)(quoting <u>Anderson</u>, 477 U.S. at 248), cert. denied, 506 U.S. 965, 113 S. Ct. 440 (1992). Summary judgment is inappropriate unless the nonmoving party "has failed to make a sufficient showing on an essential element of his case with respect to which he as the burden of proffer." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." <u>Aldrich</u>, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." <u>Bryant v. Maffucii</u>, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

In denying the defendant's motion for summary judgment in an age discrimination case, the Court noted that the evidence presented by the plaintiff to show discriminatory animus must be viewed as part of all other evidence and must be sufficient merely to raise a genuine issue of material fact, not to prove that discriminatory animus was the motive. <u>Oliver v. Nestle P.R., Inc.</u> 922 F.2d 43, 50 (1st Cir. 1990). Appellate review of a grant of summary judgment will be most searching where issues of motive or intent are

16

concerned, because such issues are to be decided by the fact finder. See <u>Aponte-Santiago v. Lopez-Rivera</u>, 957 F.2d 40, 43-44 (1st Cir. 1992).

Where the record contains evidence sufficient for a fact finder to infer discriminatory animus by an employer, the plaintiff need only make out a *prima facie* case and rebut as pretextual the employer's justification in order to defeat a motion for summary judgment. <u>Lawrence v. Northrop Corp.</u>, 980 F.2d 66, 70 n. 1 (1st Cir. 1992). Summary judgment was denied where the plaintiff established a prima facie case of age discrimination and the defendant failed to meet its burden of articulating a nondiscriminatory reason; thus, the defendant failed to demonstrate that there was no genuine issue of fact. <u>Devlin v. WSI Corp.</u>, 833 F.Supp. 69, 75-77 (D.Mass. 1993).

At the summary judgment stage, the district judge should not "superimpose his own ideas of probability and likelihood (no mater how reasonable those ideas may be) upon the [facts of] record." <u>Greenburg v. Puerto Rico Maritime Shipping Auth.</u>, 835 F.2d 932, 936 (1st Cir. 1987).

**B.   <u>Ronald Favier has Set Forth a Prima Facie Case under M.G.L. Chapter 151B</u>**

In order to establish a <u>prima facie</u> case of age discrimination, Mr. Favier has the burden of showing that: (1) he is a member of a protected class; (2) he experienced an adverse employment action; (3) he was qualified for his position, and (4) his position was taken by a younger worker. See, e.g., <u>Ventresco v. Liberty Mutual Insurance Co.</u>, 55 Mass. App. Ct. 1104 (2002); and <u>Tuccelli v. Bull HN Info. Systems</u> (Lawyers Weekly No. 12-005-94 (Cratsley, J.)(Suffolk)(Civil Action No. 91-2808C), Cited in the January 24, 1994 issue of Massachusetts Lawyer's Weekly.

Mr. Favier is a member of a protected class -- he is over 40 years old (55 years old at the time of his firing); (2) he experienced an adverse employment action -- he was terminated; (3) he was qualified for his position (e.g., he received a pay raise); and (4) his position was taken by a younger worker -- Nathaniel Binns was then 42 years old.

Once the claimant has established a prima facie case, the employer must produce evidence of facially non-discriminatory reasons justifying its employment decision. If evidence is not forthcoming, then age discrimination is presumed. See M.G.L. c. 151B, section 8. The burden of proof shifts back to the claimant only if the employer is able to produce credible contrary evidence. See M.G.L. c. 151B. If this happens, the employee must show that the explanations presented by the Respondent were merely pretexts for its actions. See Blare v. Huskey Injection Molding Systems of Boston, Inc., 419 Mass. 437, 444-445, 646 N.E.2d 111 (1995).

Here, the defendant Country Club has not met its burden of producing facially non-discriminatory reasons for its decision to terminate Mr. Favier. The reasons cited by the defendant Country Club are strictly pre-textual. Since Mr. Favier has successfully refuted the reasons presented by the defendant for its actions, the defendant's motion should be denied.

In evaluating age discrimination claims under M.G.L. Chapter 151B, Massachusetts' courts use a three-stage analysis to address discrimination claims. Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 127 (1997). In the first stage, Ronald Favier has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 440 (1995). Once the *prima facie* case is established, a presumption

18

of discrimination is created. Id. The burden then shifts to the defendant to rebut the presumption "by articulating a legitimate, non-discriminatory reason for its . . .decision." Id. Only if the defendant can satisfy its burden of production, does the presumption vanish, and then Ronald Favier would bear the burden of persuasion at the third stage to establish either that the Defendant Country Club's articulated reason was a pretext or that the actual reasons for the termination was discrimination. Id. at 444.

### C. The Defendant Country Club's Cases Are Distinguishable

Here, the Plaintiff Ronald Favier has not had the benefit of complete discovery, and thus is simultaneously filling a Motion under Rule 56(f). This fact distinguishes the case of Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The plaintiff in Messnick v. General Electric Co., 950 F.2d 816 (1st Cir. 1991) allegedly consumed too much alcohol, had attendance problems, used vulgar language, none of which is present here. In addition, said plaintiff relied exclusively on federal law. Similarly, the plaintiff in LeBlanc v. Great American, 6 F.3d 836 (1st Cir. 1993) waived his state discrimination claim. Finally, the plaintiff in Medina-Munoz v. R.J. Reynolds Co. 896 F.2d 5 (1st Cir. 1990) enjoyed two years of discovery at the District Court level.

### D. MR. FAVIER HAS SHOWN HE WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT

Mr. Favier was subjected to a hostile work environment, as exemplified in part by the humiliation of having to leave the defendant's monthly Board of Governor's meeting before the Treasurer's report was issued and discussed, usually after about 15 minutes of a 45 minute meeting.

"To be actionable under this theory, the alleged harassment must be 'sufficiently pervasive as to alter the conditions of [the victim's] employment' . . . . " O'Brien v. Avis Rent-a-Car System, Inc. (Mass. Superior 1997) 1997 WL260515, 188936 quoting Gnerre v. Mass. Comm'n Against Discrimination, 402 Mass. 502, 508-9 (1998) quoting College-Town, Division of Interco, Inc., v. Mass. Comm'n Against Discrimination, 400 Mass. 156, 162 (1987).

THE PLAINTIFF RONALD FAVIER RESPECTFULLY REQUESTS ORAL ARGUMENT ON THIS MATTER

## CONCLUSION

For the foregoing reasons, the Plaintiff, Ronald Favier, requests that the Defendant's Motion be Denied, or at least stayed until the completion of discovery.

Respectfully submitted,

RONALD A. FAVIER

By his attorneys,

Blaine J. DeFreitas (BBO No. 563321)
Edmund P. Hurley (BBO No. 556019)
BLAINE J. DeFREITAS AND ASSOCIATES
One Pleasant Street
Maynard, MA 01754
978-897-0339

Dated: December 20, 2004

I hereby certify that a true copy of the above document was served upon the attorney of record for the Defendant, Carrie J. Campion, Esquire, by hand on December 20, 2004.

Edmund P. Hurley