UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD A. FAVIER,<br><br>    Plaintiff,<br><br>vs.<br><br>MAYNARD COUNTRY CLUB,<br><br>    Defendant. | Docket No. 04-12540MLW |

**DEFENDANT MAYNARD COUNTRY CLUB'S REPLY MEMORANDUM OF LAW TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

The Defendant, Maynard Country Club ("Club"), submits this Reply Memorandum of Law to Plaintiff's Opposition to Motion for Summary Judgment, to correct the misstatements of fact and rebut the erroneous legal arguments set forth in the Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Mr. Favier's brief"). As explained more fully below, Mr. Favier's opposition fails to raise any materially disputed facts, asserts a hostile work environment age discrimination claim that is barred, and improperly states the prima facie case for age discrimination under M.G.L. c.151(b). Further, Mr. Favier attempts to avoid summary judgment by requesting additional time to uncover facts supporting his unfounded claim of pretext, yet he fails to identify any facts he believes would be discovered to support it. For those reasons, as well as the reasons discussed in the Club's moving papers, summary judgment should be granted dismissing the Complaint in its entirety.

### I. COUNTS 1 THROUGH 4 MUST BE DISMISSED.

As a preliminary matter, the Club sought summary judgment on all five counts in Mr. Favier's complaint. Mr. Favier did not oppose summary judgment on four counts.

BOS1456132.1

Because Mr. Favier did not oppose summary judgment, the Court should dismiss Mr. Favier's counts for 1) breach of contract; (2) intentional emotional distress; (3) negligent infliction of emotional distress; and (4) age discrimination in violation of the ADEA, 29 U.S.C. §621 *et. seq.*

## II.  MR. FAVIER'S M.G.L. C.151B DISPARATE TREATMENT AGE DISCRIMINATION CLAIM SHOULD BE DISMISSED.

Mr. Favier's opposition papers fail to establish any genuine issue of material fact. On the undisputed facts, the Club is entitled to summary judgment as a matter of law because Mr. Favier cannot produce evidence sufficient to establish a prima facie case of age discrimination because he was not otherwise qualified for the position[1] and his replacement had superior skills, nor can he demonstrate pretext.

Mr. Favier's brief wrongly states the fourth prong of a prima-facie case of age discrimination in a termination case.  Mr. Favier states that in order to establish a prima-facie case of age discrimination under c.151B, a plaintiff must demonstrate that:  (1) he is a member of a protected class; (2) he experienced an adverse employment action; (3) he was qualified for his position; and (4) *his position was taken by a younger worker*.  For this authority he sites Ventresco v. Liberty Mutual Insurance Co. 55 Mass. App. CT. 1104 (2002) and Tuccelli v. HN Info Systems (Lawyers Weekly N0. 12-005-94) cited in the January 24, 1994 issue of Massachusetts Lawyers Weekly.  However, both of these cases recite the prima facie case standard for a case in which there has been a reduction in force where a younger employee was retained.  The proper fourth prong of the prima-facie case for age discrimination in a termination case is recited in the Club's Motion for Summary

---

[1] For a thorough explanation of why Mr. Favier cannot satisfy the second prong, please see the Defendant's Memorandum of Law in Support of its Motion to Dismiss and for Summary Judgment.  The Club does not address that prong again in this reply brief because Mr. Favier's opposing memorandum does not raise any new issues of fact or law that need to be addressed in the Club's reply.

BOS1456132.1               2

Judgment. In a termination case where the replacement is a younger individual, the proper fourth prong is: 4) *the employer sought a replacement with roughly equivalent qualifications, thus revealing a continued need for the same services and skills*. This standard is recited in <u>Galdauckas v. Interstate Hotels Corporation, et al</u>., 901 F.2d 454, 461 (D.Mass 1995). *See also* <u>Blair v. Husky Injection Molding Systems Boston, Inc</u>., 419 Mass 437, 441 (1995).

With this fourth prong of the prima facie case clarified, it is clear that Mr. Favier cannot establish a prima facie case of age discrimination because his position was eliminated and a new position, requiring a more sophisticated skill set, was created. The Club restructured the General Manager position into a Business Manager position because it became evident that the position required a more expansive skill set. Nathaniel Binns, who assumed the new Business Manager position, had superior qualifications as compared to Mr. Favier. Mr. Binns had over eighteen years experience working at country clubs with 18 hole golf courses, held an Associate's degree in Agronomy, and spent almost three years as General Manager of a significantly larger club during its period of growth and change. *See* Resume of Nathaniel Binns attached as Exhibit 5 to Michael Kaminski's affidavit. Mr. Favier's experience cannot compare to that of Mr. Binns. (Kam. Aff. ¶ 19, Ex. 5). Mr. Favier's only experience managing a country club was his approximately three years with the Maynard Country Club. Mr. Favier failed to understand at his termination, and fails to understand even now, that the Club's new board members simply decided to take the Club in a more professional direction and Mr. Favier did not have the background or experience to assist them. Importantly, he expressed strong dissatisfaction with and resistance to this new direction. **(Pl. Dep. at 40)**

Even if Mr. Favier were able to establish a prima facie case of age discrimination, which he cannot, the Club provided a legitimate non-discriminatory reason for his

termination that he cannot rebut – that is, that the Board was dissatisfied with his performance.  This dissatisfaction with Mr. Favier's performance is established by Mr. Favier's own deposition testimony.  He acknowledged that he did not always do, and often questioned, what the Board – his employer – asked him to do.  In his own words: "if I thought it was wrong, what [Ms. Ford] requested, I stated that I didn't think it was right".  (Pl. Dep. at 40)  Mr. Favier acknowledged that this practice "didn't add to the pleasantries of the situation." (Pl. Dep. at 40)  He acknowledged that he was constantly at odds with the board, that he was "criticized all the time" and that "there was just a feeling that I couldn't do anything right." (Pl. Dep. at 42)  Further, he admitted that his assistant manager probably "knew more about managing than [he did]" and that "[he] may not be a good manager." (Campion Aff. at Ex. 6)  Even Patricia Triska, whose testimony Mr. Favier relies upon so heavily, acknowledged that Mr. Favier complained about the Board and that they were "giving him a really hard time." (Triska Dep. at pp. 60-62)  Mr. Favier cannot blame age discrimination for the Board's undisputed dissatisfaction with his performance, given his own testimony regarding his role in creating the dissatisfaction.

In his brief, Mr. Favier relied upon two pieces of evidence to demonstrate that the Club's stated reason for termination was pretext- the testimony of Patricia Triska and the DET form.  Ms. Triska's testimony regarded remote comments allegedly made by Joan Apkin and Jane Ford mostly prior to their taking office.[2]  And the statement made by the Club to the Massachusetts Department of Employment and Training ("DET") is not only unpersuasive, but more importantly, inadmissible.

---

[2] For a complete discussion regarding Ms. Apkin and Ms. Ford's statements please see the Club's Memorandum of Law in Support of its Motion to Dismiss and for Summary Judgment at pp. 17-18.

Mr. Favier incorrectly stated that Patricia Triska's deposition and affidavit testimony prohibit entry of summary judgment as a matter of law.[3]  Ms. Triska testified that Joan Apkin, Treasurer, and Jane Ford, House Committee Chairperson, made comments regarding Mr. Favier related to their displeasure in his having an affair with Sherri Hoffman, a Club employee who was Mr. Favier's junior by many years and his subordinate.  Ms. Triska testified that Ms. Apkin referred to Mr. Favier as a "f'ing old bastard" in Ms. Apkin's home, sometime during December 2001 – March 2002.[4]  Ms. Apkin also allegedly stated that she believed Mr. Favier should retire and referred to him as "that old bastard."  (Triska Dep., p. 58)  Ms. Triska testified that she believed Ms. Apkin "hated" Mr. Favier because of his affair with his subordinate, Sherri Hoffman.  (Q. "But you, it's your belief that [her hatred] has to do with Sherri Hoffman?" A. "That is what I believe." Triska Dep. at 44).  According to Ms. Triska's timeline, Ms. Apkin made no further comments once she (Ms. Apkin) assumed office in April 2002.  Id.

Ms. Triska further testified that Ms. Ford beginning in April 2002, made statements regarding Mr. Favier's alleged affair with a younger subordinate.  In this context, Ms. Ford allegedly stated that at Mr. Favier's age he could barely do his own job, never mind carry on with a younger woman.  (Triska Dep., pp. 59-60: "We were discussing, you know, Sherri and this is what the rumor, that is what she said", "And when they [Sherri and Mr. Favier] were having an affair, you know, Jane [Ford] couldn't believe it.")  When questioned why she thought Ms. Ford did not like Mr. Favier, Ms. Triska testified that it was because Mr. Favier was having an affair with his younger subordinate, Sherri Hoffman.  (Triska dep. at

---

[3] The Club treats Ms. Triska's testimony as undisputed solely for the purpose of summary judgment.

[4] To the extent that Ms. Apkin made these comments prior to May 9, 2002, they cannot be the basis for an age discrimination claim because they were made, if at all, more than 300 days prior to Mr. Favier's filing his MCAD claim.  See Point III of this Memorandum.  Mr. Favier filed his charged of discrimination with the MCAD on March 5, 2003.  Therefore, any comments made 300 days prior which is May 9, 2002, the comments are barred by the applicable statute of limitations.

35 "[Ms. Ford] said, 'Ron doesn't even do his job. He thinks his job was only involved with Sherri'") As Ms. Triska testified at her deposition, this was not an ageist comment, but a reflection of Ms. Ford's personal abhorrence for someone who was engaged in an affair, especially since the object of his affection was an employee of the Club and someone who was subordinate to him.

In any event, the remarks in and of themselves are not sufficient to carry Mr. Favier's summary judgment burden of demonstrating pretext. Mr. Favier offers no evidence to suggest that other employees who "didn't add to the pleasantries of the situation" and who, when they didn't agree with their employer, would tell them so, would have been treated any differently. *Vesprini v. Shaw Industries, Inc.*, 221 F.Supp.2d 44, 60 (D.Mass 2002) (employer's motion for summary judgment granted where seventy-one year old plaintiff proffered evidence that comments regarding him retiring such as 'you are not going to be here much longer' 'go to Florida' and 'let the young stallions take over' were made months before his termination but he failed to demonstrate that he would not have been terminated absent the comments, or that other younger employees who failed to share employer's vision for the business, as the plaintiff clearly did, would not have been terminated.) Thus, these stray comments – remote in time to Mr. Favier's termination, stemming from Mr. Favier's affair – cannot be the basis for an age discrimination claim, and cannot defeat the Club's motion for summary judgment.

The DET report states that Mr. Favier was terminated due to "lack of work". It is well established that statements or information given to the DET are "absolutely privileged," "confidential", and for the exclusive use of the DET and are therefore inadmissible evidence. Therefore, it cannot be relied upon by Mr. Favier to avoid summary judgment. M.G.L. c. 151a, Section 46(a). In any event, it is the practice of the Club to report terminations as lack of work. Without waiving its right to object to the use of any

information given by the Club to the DET, even if the Club indicated "lack of work" on the DET form as the reason for termination, that is not an indication of age discrimination; instead, it merely reflected the Club's desire not to interfere with Mr. Favier's ability to collect unemployment benefits.

### III. MR. FAVIER IS PRECLUDED FROM BRINGING A G.L. c. 151B HOSTILE WORK ENVIRONMENT CLAIM.

Mr. Favier's claim of age discrimination has apparently changed following receipt of the Club's motion for summary judgment. Given the absence of evidence to prove his disparate treatment claim, and in an attempt to avoid summary judgment on his entire complaint, Mr. Favier argued in his brief, *for the first time*, that he was subjected to a hostile work environment. Not only is such a claim barred because he failed to allege it at the MCAD level and therefore failed to exhaust his administrative remedies, he did not even allege it in the complaint in this action. *Reidy v. Travelers Ins. Co.*, 928 F.Supp. 98 (D.Mass. 1996) (A complainant must exhaust his administrative remedies under c.151B or may not avail himself of relief from a court.) The claim is also time barred to the extent that he relies upon the alleged comments made by Ms. Ford and Ms. Apkin. Those comments were allegedly made sometime between December 2001 and May 2002. Mr. Favier filed his Charge of Discrimination on March 5, 2003 – more than 300 days *after* the alleged comments were made. Thus, even if the MCAD Charge could be read to include a hostile environment claim – which it cannot – that claim would be time barred. G.L. c. 151B §5.

Even if Mr. Favier were able to bring this untimely claim at this late date, the claim is baseless and should be dismissed on summary judgment. Mr. Favier admitted that the only job action he believed was taken on the basis of his age was his termination. Favier Deposition at p. 96:

| | | |
|---|---|---|
| Q. | | Is it your position that Maynard terminated your employment because of age? |
| Mr. Favier: | | Yes. |
| Q. | | Did Maynard doing anything else to you during your employment that was based on age? |
| Mr. Favier: | | I do not believe so, no. |
| Q. | | So, you've told me all of the job actions that Maynard took with respect to your employment that were based on your age? |
| Mr. Favier: | | *My termination, yes.* |

Moreover, at the MCAD, Mr. Favier alleged that he performed well as general manager, received "constant praise from [his] fellow employees, Club members, the Board of Governors, and guests" and was "surprised" at his termination.  Ronald A. Favier's affidavit submitted in support of MCAD Charge of Discrimination dated February 10, 2003.  Clearly, a hostile environment claim cannot be based on such "constant praise".  Given the content of his MCAD claim, the Club was not put on notice of, nor did it reasonably expect to defend against, a hostile work environment claim.  *Mole v. University of Massachusetts*, 58 Mass.App.Ct. 29, 47 (2003).  Mr. Favier's hostile environment claim cannot survive where he changes his story from forum to forum, merely to try to defeat a summary judgment motion.

### IV. MR. KAMINSKI CHANGED HIS OPINION OF MR. FAVIER'S WORK PERFORMANCE AS THE 2002 GOLF SEASON PROGRESSED AND THE BOARD'S PERFORMANCE GOALS TOOK SHAPE.

Mr. Favier relied upon Mr. Kaminski's initial support of him as General Manager when Mr. Kaminski first became President in April 2002, and his later dissatisfaction with Mr. Favier's performance, as evidence of discrimination.  Contrary to Mr. Favier's allegations, Mr. Kaminski initially supported Mr. Favier because he was popular with the Club's membership.  This is not in dispute.  It was when Mr. Kaminski and the other Board

**members sought to bring the Club to a higher business standard during the 2002 golf season, and when Mr. Favier failed to meet the Board's new expectations, that Mr. Kaminski became dissatisfied with Mr. Favier's performance.** Kaminski Affidavit at ¶ 12.

## CONCLUSION

For the reasons explained in the Club's main Memorandum, and in this Reply Memorandum, the undisputed facts in the record entitle the Club to summary judgment dismissing all counts of the Complaint.

Respectfully submitted,

MAYNARD COUNTRY CLUB

By its attorneys,

/s/ Carrie J. Campion_____
David S. Rosenthal (BBO No. 429260)
Carrie J. Campion (BBO No. 656451)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-2131
(617) 345-1000

Dated: January 25, 2005

### Certificate of Service

I hereby certify that a copy of the above request was mailed to Plaintiff's counsel at his last known address on January 25, 2005.

/s/ Carrie J. Campion_____
Carrie J. Campion