UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD A. FAVIER,<br><br>                          Plaintiff,<br><br>vs.<br><br>MAYNARD COUNTRY CLUB,<br><br>                          Defendant. | Docket No. 04-12540MLW |

**THE DEFENDANT MAYNARD COUNTRY CLUB'S OPPOSITION TO THE
PLAINTIFF'S MOTION TO STRIKE PORTIONS OF THE DEFENDANT'S
<u>AFFIDAVIT OF MICHAEL KAMINSKI</u>**

      The defendant Maynard Country Club (the "Club") hereby opposes the plaintiff's motion to strike portions of the Affidavit of Michael Kaminski (the "Affidavit") because the Affidavit meets the requirements of Fed. R. Civ. P. 56(e).[1]  This motion to strike is yet another of Mr. Favier's flawed attempts to avoid summary judgment on his baseless Complaint.  Since, Mr. Favier cannot defeat the Club's motion with Mr. Kaminski's testimony intact, he must move to strike it.  However, Mr. Kaminski's Affidavit submitted in support of the Club's Motion to Dismiss and for Summary Judgment (the Club's "Motion") clearly lays out the evolution of and basis for the Board's decision to terminate Mr. Favier's employment contract.  The Affidavit is based upon competent evidence consisting of Mr. Kaminski's personal knowledge and the knowledge imputed to him as the President of the Club's Board of Governors (the "Board").  The Affidavit thus fully complies with the relevant rules of evidence and should not be stricken.

---

[1] For the Court's convenience, the Club attached a copy of Michael Kaminski's affidavit to this opposition.

**Argument**

Affidavits submitted in support of a summary judgment motion must be made upon personal knowledge, show affirmatively that the affiant is competent to testify to the matters stated therein, and set forth the facts as would be admissible in evidence. Fed. R. Civ. P. 56(e). Motions to strike portions of affidavit testimony must be specific in its request, directing the Court to the particular submission the party wants stricken and setting forth the reasons why the Court should take such action. Any portions not deleted will be considered by the Court. Fed.R. Civ. P. 12(f).

Mr. Favier seeks to strike Mr. Kaminski's statements regarding the Board's actions, or its rationale for certain actions. Mr. Kaminski is the President of the Board, and participated in the decision-making of the Board which is at issue in this case. His affidavit testimony was made in his capacity as Board President, and as a participant in the meetings and decisions at issue, which allowed him access to open and closed sessions of the Board, and provided him with familiarity with the Club's policies and procedures. It is well settled that corporate officers are presumed to have knowledge of the acts of their corporation, and "personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore." <u>Barthelemy v. Air Line Pilots Ass'n</u>, 897 F.2d 999, 1018 (9th Cir. 1989);11 Moore's Federal Practice § 56.14[1][c] (Matthew Bender 3d ed.) In his affidavit, Mr. Kaminski made several statements regarding actions or policies of his Board. As Board president he was competent and qualified to make such statements in affidavit testimony. As the President, not only is Mr. Kaminski competent to testify regarding Board actions and policies, but he is the most qualified and appropriate person to speak on its behalf. His affidavit

stated that the content of his affidavit is based on facts which are "true to his knowledge."

(Kaminski Aff. p. 1)

## The Challenged Statements

1. Statement

> The status reports were relied upon by the Board to make business decisions regarding the overall success and profitability of Club activities. Kam. Aff. ¶ 5, last sentence.

Plaintiff's argument

     The affiant may testify as to his own knowledge and observations.  He may not testify as to "the Board" as a whole.  The affiant has set forth no first hand knowledge or experience upon which he can rely to forward this statement. Commonwealth v. Boris, 317 Mass. 309, 58 N.E. 2d 8 (1944); Coca Cola Co. v. Overland, Inc., 695 F.2d at 1254-55.  The defendant apparently seeks to have the Court abdicate its role as a fact-finder, and instead accept its unfounded conclusions as to the conduct, and intent of the defendant's agents and Ronald Favier.

Defendant's opposing argument

     Mr. Kaminski possessed personal knowledge regarding how the business reports were utilized by the Board.  As the Board President, he is presumed to have knowledge regarding the procedures utilized by the Board, including how status reports were used and relied upon by the Board.  11 Moore's Federal Practice § 56.14[1][c] (Matthew Bender 3d ed.) citing Barthelemy, 897 F.2d at 1018.  He did, in fact, have personal knowledge that the business reports were relied upon by the Board in making its business decisions.  (Kaminski Aff. ¶ 5)  There is no legally sufficient reason to strike this sentence from the affidavit.

2.    Statement

> Prior to the new Board elections in 2002, the House Committee Chairperson never requested that Mr. Favier prepare any types of financial reports, rather leaving it to Mr. Favier's discretion what financial reports he chose to present. Kam. Aff. ¶ 8, last sentence.

Plaintiff's Argument

Again, the affiant may state his own observations and knowledge. The unnamed prior Chairperson's alleged failure to request certain documents from Mr. Favier is inadmissible hearsay.

Defendant's opposing argument

As Board President, and prior to that as a general Board member, Mr. Kaminski possessed personal knowledge regarding the history of who prepared financial reports for the Board's review and the leeway provided to Mr. Favier in what financial reports to prepare. 11 Moore's Federal Practice § 56.14[1][c] (Matthew Bender 3d ed.) citing Barthelemy, 897 F.2d at 1018. He may testify regarding his knowledge of same. There is no hearsay involved in this statement. This sentence should not be stricken from Mr. Kaminski's affidavit.

3. Statement

> The Board collectively determined that Mr. Favier did not seem willing to work with the Board in achieving its goals, nor did he exhibit the necessary skills, including the managerial skills, necessary to effectively handle difficult or confrontational employment situations and the skills and willingness to assist the Board usher in new professional and business standards for the Club. Kam. Aff. ¶ 12, first sentence. As a result, the Board wanted to terminate Mr. Favier, reshape the position of General Manager into a higher level position called a Business Manager position, and fill it with a Business Manager who shared the same vision for the Club as the Board. Kam. Aff. ¶ 12, second sentence.

Plaintiff's Argument

President Kaminski presents no foundation. Again, the affiant may speak for himself, but not the Board as a whole. This is particularly the case where the Board members are not identified and their alleged statements or desires are lumped in a collective format.

Defendant's opposing argument

Mr. Kaminski, as Board President, possessed personal knowledge regarding the decision making process of the Board regarding Mr. Favier's willingness to work with the Board in achieving its goals, and the Board's ultimate decision to eliminate the General Manager position and create the Business Manager position. (Kaminski Aff. ¶¶. 3-13). As the Board President, he

4

is presumed to have knowledge regarding Board discussions and decisions, and, in fact, did have such personal knowledge. 11 Moore's Federal Practice § 56.14[1][c] (Matthew Bender 3d ed.) citing Barthelemy, 897 F.2d at 1018.  This sentence should not be stricken from Mr. Kaminski's affidavit.

4.  Statement

> Because we concluded that Mr. Favier did not have the skills and was not willing to work cooperatively with the Board to accomplish this goal, the decision to terminate him was necessary. Kam. Aff. ¶ 14, last sentence.

Plaintiff's Argument

This sentence must be stricken.  The affiant is not competent to render this statement and it must be stricken pursuant to Fed. R. Civ. P. 12(f) as it is not relevant and immaterial.  Burke v. Mesta Mach. Co., 5 F.R.D. 134, 138 (W.D.Pa. 1946).  The affiant may speak for himself, not some unidentified other persons.  This Court needs specific facts with specific persons attached thereto.  The so-called Royal "we" is not appropriate in this context, particularly where discovery has not been completed.

Defendant's Opposing Argument

This sentence refers to the Board's decision to vote to terminate Mr. Favier's employment contract.  Information regarding the Board's legitimate business reason for terminating Mr. Favier's employment contract is not only relevant and material, but is an essential factor in the shifting of burdens in this age discrimination case.  Mr. Kaminski, as the Board President, was present for and participated in the Board's discussion regarding whether to hold a vote to terminate Mr. Favier's employment contract.  Since Mr. Kaminski is presumed to have knowledge regarding such Board actions and, in fact, did have personal knowledge, the sentence should not be stricken from Mr. Kaminski's affidavit. 11 Moore's Federal Practice § 56.14[1][c] (Matthew Bender 3d ed.) citing Barthelemy, 897 F.2d at 1018.

5. Statement

After Mr. Favier's termination, the Board eliminated the position of the General Manager and created the position of Business Manager. As the position has developed, the Business Manager performs all of the duties of the former General Manager plus he is responsible for the maintenance of the golf course, supervising the Greens' Superintendent. Kam. Aff. ¶ 18, first sentence.

Plaintiff's argument

In paragraph 18 the defendant again has attempted to circumvent the applicable pleading requirements. The affiant is apparently not relying on first hand knowledge or experience to state known facts. Commonwealth v. Boris, 317 Mass. 309 (1944); United States v. Cox, 633 F.2d at 815. Rather, the affiant presents a statement which is inadmissible hearsay. Thus, the entire paragraph sets forth inadmissible hearsay and violates Fed. R. Civ. P. 12(f) and should be stricken.

Defendant's opposing argument

Mr. Kaminski makes this statement based on his personal knowledge of the Board's elimination of the General Manager position and the evolution of the Business Manager position. This statement should not be stricken. There is no hearsay involved in this Statement.

6. Statement

Nathaniel Binns (who I believe to be in his mid-40's), the Club's Business manager is an individual with over eighteen (18) years experience in golf course and club management, as well as sophisticated skills regarding managing club finances. Kam. Aff. ¶ 19, first sentence.

Plaintiff's argument

The affiant apparently does not know Mr. Binns' age, and has failed to verify same. This failure is odd, inasmuch as the affiant is the President of the defendant country club, who presumably has access to the defendant's personnel records. The affiant's mere belief, and without a specific age, is irrelevant, inadmissible conjecture. The affiant's alleged failure to know the age of the plaintiff's replacement is just one example of the need for discovery to be completed.

Defendant's opposing argument

Mr. Kaminski's statement is based on his understanding of Mr. Binn's age, and his understanding of Mr. Binn's prior work experience. Mr. Binn's resume, reflecting his

extensive experience, is attached to Mr. Kaminski's affidavit as Exhibit 6.  Plaintiff's contentions regarding "irrelevant, inadmissible conjecture" are simply frivolous.

7.  Statement

In recognition of the Board's higher expectations and standards for the Business Manager position, the Business Manager has been offered a significantly higher salary.  Kam. Aff. ¶ 20.

Plaintiff's argument

The language of paragraph twenty (20) should be stricken.  The affiant's statement does not set forth facts as is required in a proper affidavit.  McLaughlin v. Copeland, 435 F. Supp. 513 (D.MD. 1977).  Rather the affiant engages in self serving, speculative, conjectural, conclusory accusations for which insufficient factual basis is forwarded.  The entire sentence is inappropriate under the rules of pleading and should be stricken pursuant to Fed. Rule. Civ. P. 12(f).  Burke v. Mesta Mach. Co., 5 F.R.D. 134, 138 (W.D.Pa.1946).

Defendant's opposing argument

Mr. Kaminski, as Board President, had personal knowledge of his Board's desire to upgrade the position held by Mr. Favier.  He also knows the salary paid by the Club to Mr. Binn, as it is set by the Board.  There is no basis for striking this portion of the Affidavit.

8.  Statement

Mr. Binns, unlike Mr. Favier, has embraced the Board's vision for a greater professional and businesslike approach to managing the Club. Kam. Aff. ¶ 21.

Plaintiff's argument

The affiant may speak as to his own "vision", but not speak for the entire "Board's vision."  The sentence should be stricken.  The affiant speculates without the benefit of correlative facts upon which to premise his unfounded allegation of a lack of "vision."  Thus, the language of this paragraph is irrelevant and immaterial and should be stricken from the affidavit.  United States v. Cox, 633 F. 2d at 875; Coca Cola Co. v. Overland Inc., 692 F.2d at 1254-55.  Again, the affiant fails to state specific facts and instead relies upon self-serving, speculative, conjectural and conclusory statements.  The affiant has set forth no factual basis for the statements.  Commonwealth v. Boris, 317

Mass. 309, 58 N.E,2d 8 (1944).  It appears the affiant seeks to interpose himself and his judgment for a matter which is a matter for judicial interpretation. Once again the affiant seeks to have the Court abdicate its role as a fact-finder and, instead, accept his unfounded conclusion as to the intent of the defendant's Board of Governors.  This is not an appropriate or admissible form of affidavit and the offending language should be stricken as inadmissible, irrelevant, and immaterial.  Burke v. Mesta Mach. Co., 5 F.R.D. 134, 138 (W.D.Pa1946).  Furthermore, the affidavit has failed to state facts upon which the Court may draw inferences and conclusions.  The language of the affiant should, therefore, be stricken pursuant to Fed R. Civ. P. 12(f).  Slaven v. Salem, 386 Mass. 885, 438 N.E.2d 348 (1982).

Defendant's opposing argument

As stated previously, Mr. Kaminski, as Board President is presumed to have personal knowledge of the Board's actions, including what the Board was trying to accomplish – that is, its "vision."  He also has personal knowledge regarding the Board's assessment of Mr. Favier's and Mr. Binn's performance relative to this "vision."  There is no basis for striking this portion of the Affidavit.

**Conclusion**

Mr. Kaminski's affidavit complies with the requirements of Fed. R. Civ. P. 56(e) in that his statements are made on personal knowledge, set forth the facts as they would be admissible in evidence and he was competent to testify to the matters within his affidavit. As a result, no portion of Mr. Kaminski's affidavit should be stricken.

Respectfully submitted,

MAYNARD COUNTRY CLUB

By its attorneys,

/s/ Carrie J. Campion_____
David S. Rosenthal (BBO No. 429260)
Carrie J. Campion (BBO No. 656451)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-2131
(617) 345-1000

Dated: January 25, 2004

**Certificate of Service**

I hereby certify that a copy of the above request was mailed to Plaintiff's counsel at his last known address on January 25, 2005.

/s/ Carrie J. Campion_____
Carrie J. Campion

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONALD A. FAVIER,<br><br>                  Plaintiff,<br><br>vs.<br><br>MAYNARD COUNTRY CLUB,<br><br>                  Defendant. | Docket No. 04-12540MLW |

## AFFIDAVIT OF MICHAEL KAMINSKI

Michael Kaminski, on oath, deposes and says:

1.      I am the President of the Board of Governors (the "Board") that oversees the operations and management of the Maynard Country Club (the "Club"). The Club is a semi-private, 9 hole golf course golf club located in Maynard, Massachusetts. The facts in this affidavit are true to my knowledge.

2.      I was elected President of the Board in April 2002.

3.      Ronald A. Favier ("Mr. Favier") was the General Manager of the Club from January 2000 until the termination of his employment in December 2002. He was 52 years of age when he was hired, and 55 when his employment was terminated.

4.      At the time I took office, the Club was loosely organized, the finances were not in order, and there were not reliable systems in place regarding the operations of the Club. When I was elected President, part of my vision for the Board was to examine thoroughly the operations, management and finances of the Club, and to have the Club run in a more professional and business-like manner.

5.	The Board met monthly to discuss any issues related to the Club and received status reports from various individuals regarding the operations and financial health of the Club. At Board meetings, among the status reports presented were status reports on the activity and finances of the House (the main Club, excluding the golf course). The House status reports were intended to present the Board with a picture of the activity, operations and financial health of the House. The status reports were relied upon by the Board to make business decisions regarding the overall success and profitability of Club activities.

6.	At the time of my election, Peter Boeing was Vice President and the House Committee Chairperson.

7.	I appointed Jane Ford to the position of House Committee Chairperson, replacing Mr. Boeing. She was Mr. Faiver's direct supervisor. In addition to her supervisory role over Mr. Favier, Ms. Ford was responsible for working cooperatively with the new Treasurer, Joan Apkin, to identify ways that the Club could run more cost effectively and efficiently. As a result of this, both she and Ms. Apkin were required to work closely with, and to scrutinize, Mr. Favier's job performance to achieve these business goals.

8.	Ms. Ford took over a portion of Mr. Favier's responsibility of providing the Board with status reports on the House. Ms. Ford requested that Mr. Favier provide her with an analysis of certain financial aspects of the House for her reports. These included financial analyses of the Club's events, the profit margin of food and drinks sold by the Club, and the inventory and sales of the Pro Shop. Mr. Favier either failed to provide her with the analysis she required so that she could prepare meaningful financial reports, or he provided her with incomplete or inaccurate reports. Prior to the new Board elections in 2002, the House Committee

Chairperson never requested that Mr. Favier prepare any types of financial reports, rather leaving it to Mr. Favier's discretion what financial reports he chose to present.

9. It became apparent to me that Mr. Favier either failed to understand the importance of providing this information, was incapable of preparing the analyses, or simply refused to provide the analyses to Ms. Ford.

10. Mr. Favier informed Jane Apkin, the new Club Treasurer, on May 5, 2002 that he had submitted his resignation, stating that he could not "take" the "oversight" and "member pressure" anymore. Attached to this affidavit as Exhibit 1 is a true copy of an e-mail from Jane Apkin to Board members and me, dated May 5, 2002.

11. Mr. Favier attempted to provide raises to staff employees without the appropriate authorization from Ms. Ford. Mr. Favier made promises to his staff that he would get them pay raises even though the Board did not tell him that pay increases were in the budget. As a result, Mr. Favier caused an employee to quit because he did not receive the raise Mr. Favier led him to believe he would receive. *See* e-mail between Jane Ford and Ronald A. Favier, with copy to me, dated September 25, 2002, attached to this affidavit as Exhibit 2.

12. The Board collectively determined that Mr. Favier did not seem willing to work with the Board in achieving its goals, nor did he exhibit the necessary skills, including the managerial skills, necessary to effectively handle difficult or confrontational employment situations and the skills and willingness to assist the Board usher in new professional and business standards for the Club. As a result, the Board wanted to terminate Mr. Favier, reshape the position of General Manager into a higher level position called a Business Manager position, and fill it with a Business Manager who shared the same vision for the Club as the Board. We

wanted a manager who could work cooperatively, not combatively, with the Board to achieve its vision.

13.     In an Executive Session in October 2002, the executive committee voted 7-1 to terminate Mr. Favier's employment agreement pursuant to paragraph 6 of that agreement, the 30-day notice termination clause.  A true copy of the employment agreement is attached to this affidavit as Exhibit 3.  A true copy of the letter from the Board of Governors to Mr. Favier terminating his employment agreement is attached to this Affidavit as Exhibit 4.  Of the nine voting members on the Board, eight attended the executive session (ages 39, 41, 49, 50, 54, 58, 65 and 80) and voted by secret ballot.  The members voting included: Jane Ford (age 41), Joan Apkin (age 49), Janet McKean, Jane Audrey Neuhauser, Michael Cardillo, Ted Bubier, Pauline Hendrix, and Bob Sweeney.  I agreed with the decision and I was 54 years of age. On December 16, 2002, I informed Mr. Favier that the Board had voted to terminate his employment agreement and would pay him thirty (30) days salary.

14.     Mr. Favier was popular with the Club's rank and file members.  I liked him personally as well.  However, my duty as President and the Board's duty to the membership was to make sure that the Club was being run by a competent, professional and business-like manager.  The Board needed to ensure that the General Manager was willing and able to assist the Board in taking the operations of the Club to the next level.  Because we concluded that Mr. Favier did not have the skills and was not willing to work cooperatively with the Board to accomplish this goal, the decision to terminate him was necessary.

15.     At no time during Mr. Favier's employment did the Club employ twenty or more people for twenty or more weeks.

16. Since the Club employs a relatively small number of employees it does not maintain any formal policies regarding reporting perceptions of discrimination. However, I maintain an open door policy and let each employee know that he or she is free to speak directly with me regarding any perceived problems, including discrimination.

17. Mr. Favier came to me quite often from April 2002 up through his termination to complain to me regarding his work situation. During those conversations he complained that he felt he was working too many hours, was asked to prepare too many reports, was pulled in too many directions, and was frustrated by being micromanaged and criticized by the Board. Yet during all of our conversations, he never once expressed a belief that he was being treated differently or being discriminated against on the basis of his age. Further, at no time during my conversation with Mr. Favier during his termination meeting did Mr. Favier mention to me that he felt he was being terminated or was treated differently because of his age.

18. After Mr. Favier's termination, the Board eliminated the position of the General Manager and created the position of Business Manager. As the position has developed, the Business Manager performs all of the duties of the former General Manager plus he is responsible for the maintenance of the golf course, supervising the Greens' Superintendent.

19. Nathaniel Binns (who I believe to be in his mid-40's), the Club's Business Manager is an individual with over eighteen (18) years experience in golf course and club management, as well as sophisticated skills regarding managing club finances. Attached as Exhibit 5 is a copy of the Nathaniel Binn's resume submitted for the position of Business Manager. Mr. Favier, by contrast, had just less than three years experience at the Club, and no prior golf course or golf club management experience. He had worked previously in an auto parts business. Mr. Favier's experience does not compare to that of Mr. Binns.

20. In recognition of the Board's higher expectations and standards for the Business Manager position, the Business Manager has been offered a significantly higher salary.

21. Mr. Binns, unlike Mr. Favier, has embraced the Board's vision for a greater professional and businesslike approach to managing the Club.

Sworn to under the pains and penalties of perjury this 6th day of December, 2004.

                                         /s/ Michael Kaminski
                                         Michael Kaminski